The NATIONAL BANK OF COMMERCE OF HOUSTON, Co-Trustee, et al., Appellants,

v.

Mrs. Lindsey H. DUNN, Appellee.

No. 14306.

Court of Civil Appeals of Texas.

Houston.

June 4, 1964.

On Rehearing July 9, 1964.

Rehearing Denied Sept. 10, 1964.

Liddell, Austin, Dawson & Sapp, W. Robert Brown, Houston, for appellants.

Dyess, Dyess, Prewett & Cantey, Williams, Lee & Lee, James W. Lee, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a summary judgment rendered in favor of appellee declaring that appellee is entitled to "one-half of the net profits having accrued and to accrue from the following described land, * * *." Then follows a statement that it applies to an undivided 192.057 acre interest out of a specifically described 1729 acres in Chambers County. Following the description is the provision that this "one-half of the net profits" shall be "from and after the defendants * * * have received $1,500.00 income from said property in accordance with the provisions of an unrecorded net profit agreement dated the 12th day of October, 1937 between The Federal Royalty Company and L. H. Dunn, * * *"

Suit in the nature of trespass to try title was originally filed by appellee in Chambers County on May 22, 1961. Finally appellee filed her third amended original petition and this was the petition considered on motion for summary judgment. Appellee alleged she filed this petition pursuant to "Article 2524, R.C.S., the Uniform Declaratory Judgment Act." Then following allegations as to the parties to the suit and their capacities the following allegations appear:

II.

"That on October 12, 1937, Lee Ma-Gee, President of The Federal Royalty Company, in consideration for services described therein, gave to Mr. Lindsey H. Dunn a letter agreement which is appended hereto as Exhibit A and made a part hereof, wherein was granted to the said Lindsey H. Dunn a one-half (½) interest in the hereinafter described land, to-wit:

"An undivided 192.057 acre interest out of 1729 acres of land, more or less, out of the Thomas Jefferson Chambers Grant in Chambers County, Texas, being the same lands awarded to plaintiffs and plaintiff-interveners by decision of the Supreme Court of Texas dated March 2, 1955 in Cause Number A-4666 before said

Court, styled Bascom Giles et al v. J. N. Basore et al, said judgment being recorded in Volume 167, at page 119 of the Deed Records of Chambers County, Texas, the lands so awarded to Plaintiffs and plaintiff-interveners being described as Tracts Nos. 1, 2, 3, 4 and 10 in judgment of the District Court of Travis County, Texas, in said cause, which judgment is dated February 6, 1953 and duly recorded in Volume 167 at pages 112 to 118 inclusive, in the Deed Records of Chambers County, Texas.

### III.

"Thereafter, on July 8, 1957 The Federal Royalty Company conveyed unto The National Bank of Commerce of Houston, Trustee, various properties including the above described undivided interest making it 'subject to an unrecorded net profit agreement dated October 12, 1937 between The Federal Royalty Company and L. H. Dunn.' Said conveyance is appended to this pleading as Exhibit B and made and incorporated as a part hereof.

### IV.

"The said Exhibit A is the unrecorded net profit agreement referred to in said conveyance, Exhibit B, and is according to the express terms of said conveyance a qualification upon the grant of the undivided acreage conveyed and described therein.

### V.

"Royalties and profits have accrued from the described acreage since the date of the conveyance, Exhibit B, to the Defendants herein who are withholding all of such from this Plaintiff who is the sole devisee of the said Lindsey H. Dunn as shown by Exhibit C, attached hereto and made a part hereof, being the Will, Order admitting the Will to probate and Oath of Plaintiff as Independent Executrix of the Estate of Lindsey H. Dunn, Deceased.

"Wherefore, this Plaintiff prays that she have her judgment against the Defendants herein, jointly and severally, declaring her right, title and interest to one-half of the accrued net profits due hereunder and in accordance with said letter agreement attached hereto, and such right, title and interest in and to future accruals from said property to which she is entitled, and for such other and further relief that she may be entitled to, general or special, either at law or in equity, and for all costs herein."

Attached to the petition was a copy of a deed to the appellants, The National Bank of Commerce of Houston and H. Fort Flowers, Co-Trustees, from The Federal Royalty Company, conveying various properties including that material to this suit. The deed conveys the property here involved by use of the following language:

"An undivided 192.057 acre interest out of 1729 acres of land: 1729 acres of land, more or less, out of the Thomas Jefferson Chambers Grant, in Chambers County, Texas, being the same lands awarded to plaintiffs and plaintiff-interveners by decision of the Supreme Court of Texas dated March 2, 1955, in cause No. A–4666 before said court, styled Bascom Giles et al. v. J. N. Basore et al., said judgment being recorded in Volume 167, p. 119, of the Deed Records of Chambers County, Texas, the lands so awarded to plaintiffs and plaintiff-interveners being described as Tracts Nos. 1, 2, 3, 4 and 10 in judgment of the District Court of Travis County, Texas, in said case, which judgment is dated February 16, 1953, and duly recorded in Volume 167, Pages 112 to 118, inclusive, in the Deed Records of Chambers County, Texas.

"The above described interest is subject to an unrecorded net profit agreement dated October 12, 1937, between The Federal Royalty Company and L. H. Dunn."

While the petition states that the so-called unrecorded profit agreement is attached, we do not find it or a copy attached, but we do find a copy in the deposition of Mr. I. S. Handy. It reads as follows:

"Lee Hager     THE FEDERAL ROYALTY COMPANY     Lillian Powell
President         Suite 1521 Esperson Building        Secy. & Treas.
Houston, Texas
October 12, 1937

Ike S. Handy
General Counsel

Mr. L. H. Dunn
518 West Building
Houston, Texas

Dear Lindsey:

This will evidence our agreement to purchase the interest of Albert A. Schweinle in all of the islands lying at the mouth of the Trinity River, being out of the Thos. J. Chambers Survey, Abstract No. 9, in Chambers County, Texas, advancing to you this day the sum of $975, which is on a basis of $10 per acre for that part of the land, the title to which we have approved. It is agreed that if the title to the remaining interest, to-wit, approximately 195 acres, should be cleared and approved by us, we will make you additional advances so that the total amount advanced would be $1500.

It is further agreed that out of the money which may be received for a lease, or other disposition of this land, we are to be repaid the amount advanced to you, and any excess is to be divided equally between us, and thereafter you are to be carried for and own a one-half (½) interest in the land.

It is agreed that in the event a settlement of the title to all of the islands is agreed upon by the other owners, we will ratify a settlement by which the adverse claimants, to-wit, those claiming under the Saladee heirs, receive a one-fourth (¼) interest in the said islands.

Notwithstanding the agreement as above set forth, it is further understood and agreed that in purchasing the interest from Schweinle, as above stated, we shall be free to deal with same as if it were an outright purchase.

APPROVED                Very truly yours

(signed)   L. H. Dunn        THE FEDERAL ROYALTY COMPANY

ISH:MP                    By (signed) L. W. Hager, Pres."

———◆———

Also attached to the petition are copies of certified copies of the will of L. H. Dunn, and the order admitting it to probate.

After this petition was filed in the District Court of Chambers County, appellants filed their pleas of privilege to be sued in Harris County, and by the consent of all parties the case was transferred to Harris County.

Appellants filed their answer which contained a plea in abatement, setting up that The Federal Royalty Company was a nec-

essary party to the suit. Further, the answer asserted the following:

1. The alleged net profit agreement was uncertain, ambiguous and unclear as to whether the alleged agreement was intended to be for the benefit of and bind the heirs, successors and assigns of The Federal Royalty Company and L. H. Dunn, and extrinsic evidence should be received as to the acts and conduct of the parties to determine their intent.

2. The cause of action was barred by the 1, 2, 3 and 4 year statutes of limitation and laches.

3. The alleged agreement could not be construed as a covenant running with the land.

4. As an offset they pled in 1941 Dunn owed The Federal Royalty Company some $35,000.00.

5. That by mutual agreement between Dunn and The Royalty Company all obligations between the parties had been released.

To this answer appellee filed a reply which, among other things, not here necessary to notice, denied a release.

Appellee filed her unsworn motion for summary judgment, asserting that on a basis of the pleadings, deposition and exhibits on file there was no genuine issue of any material fact because the "unrecorded net profit agreement dated October 12, 1937" expressly provides:

"It is further agreed that out of the money which may be received for a lease, or other disposition of this land, we are to be repaid the amount advanced to you, and any excess is to be divided equally between us (Lindsey H. Dunn and The Federal Royalty Company), and thereafter you are to be carried for and own a one-half (½) interest in the land."

Then follows the part of the deed to appellants that specifies: "The above de-scribed interest is subject to an unrecorded net profit agreement dated October 12, 1937, between The Federal Royalty Company and L. H. Dunn."

Appellants replied to this motion for summary judgment and asserted there were issues of fact in the following respects:

1. Whether L. H. Dunn and The Federal Royalty Company intended the alleged net profit agreement to be a covenant running with the land.

2. Whether the claim is barred by limitations or laches.

3. A factual accounting or setoff and counterclaim between Dunn and The Federal Royalty Company.

4. Whether there had been a release.

Further, the answer asserted there was a failure by appellee to establish the following:

1. That the land described in the deed was the same or any part of the land described in the agreement of October 12, 1937.

2. That appellee was entitled to prosecute this suit because the alleged copies of the will and order admitting it to probate were not certified ones or supported by affidavits.

3. The alleged deed into appellants was an uncertified copy and the execution of the original was not proven.

4. That appellants ever assumed the obligation to Dunn.

Appellants by reference made their answer a part of the reply to the motion for summary judgment.

The motion is sworn to by W. L. Woellert, a Trust Officer of appellant Bank. He swears that "the foregoing Answer to Plaintiff's Motion for Summary Judgment and Defendants' Answer to Plaintiff's Third Amended Original Petition and ev-

ery allegation, statement and denial thereof are true and correct."

It is to be noted that the affidavit does not affirmatively reflect either by a statement to that effect or by any facts appearing anywhere in the record, that Mr. Woellert is personally acquainted with any of the alleged facts asserted in any of the pleadings in the case or the pleadings relating to the motion for summary judgment. The only thing that can be reasonably inferred from the record is that Lee Hager, President of The Federal Royalty Company, I. S. Handy, Vice President and General Counsel of The Federal Royalty Company, and L. H. Dunn are the only persons personally acquainted with any material portion of the transaction involved. Mr. Hager and Mr. Dunn are both dead. Obviously Mr. Woellert bases his information on hearsay. This does not satisfy the requirements of Rule 166-A, Texas Rules of Civil Procedure.

Other than the pleadings of the parties and the attached exhibits, the record consists of the depositions of Mr. Handy and Mr. Daniel Fort Flowers. The deposition of Mr. Flowers merely establishes that through 1956 there had been income from the property of less than $100.00. This represented income from oil and gas produced under a lease executed by The Federal Royalty Company to the Union Producing Company. Too, he testified that in each succeeding year there had been income of about $1500.00. His deposition was taken in July, 1962. The deposition of Mr. Handy reflects that in 1957 The Federal Royalty Company was liquidating its properties and the deed to appellants was given in furtherance of liquidation. He also testified the Company had liquidated and was no longer in existence. He established the execution of the so-called "net profits" agreement. He stated he dictated it. He further stated that pursuant to the proposals made by the Royalty Company Lindsey Dunn acquired the Schweinle fee interest as contemplated by the letter. The $975.00

mentioned in the first paragraph of the letter was advanced to Mr. Dunn. Later title to the approximately 195 acres was cleared and approved and *the total amount advanced to Mr. Lindsey Dunn was in the sum of $1500.00 for him to use in acquiring the Schweinle fee interest in those islands at the mouth of the Trinity River.* These amounts were carried on the books as costs of acquiring lands, minerals and royalties. Prior to the conveyance to the appellants, The Federal Royalty Company executed a lease to the Union Producing Company. On cross-examination he testified he prepared the deed which was shown him and marked Defendants' Exhibit 1, which was referred to by appellants' counsel as the deed to the National Bank of Commerce which included the statement, "The above described interest is subject to an unrecorded net profit agreement dated October 12, 1937, between The Federal Royalty Company and L. H. Dunn." Attached to the deposition is an alleged copy of the deed certified by the Chambers County Abstract Company. Further in response to appellants' counsel's question, he stated that under the agreement he understood Mr. Dunn had an interest in the property after the cost of it had been repaid. There had not to his knowledge been any net profits by disposition of the property. There had been only the conveyance to appellants and a lease to the Union Producing Company. He intended that Mr. Dunn should become vested with a half interest in the fee title after repayment of the cost. Nothing had been paid by Mr. Dunn at the time of liquidation and no deed had been executed conveying his interest. If the property had been sold instead of being leased the proceeds would have been applied to the cost of acquisition and the balance, if any, would be divided equally between Mr. Dunn and The Federal Royalty Company. This was his intention. It was also his intention that if the property were sold Mr. Dunn's interest would necessarily terminate. Mr. Dunn would have an interest in the money derived from the sale. It was his intention that

Mr. Dunn would have a one-half interest in the property or any income from the property, howsoever derived, after The Federal Royalty Company had been returned its cost. In other similar deals, if property were sold Mr. Dunn got his interest in profit and if leased he got his interest in the royalty, bonus or howsoever "we derived from it." The last paragraph of the letter contemplated that they had the right to sell it or lease it or make any disposition they saw fit. It was not his intention that Mr. Dunn's interest would be only in the profits realized from disposition of the land. There was no bonus paid for the lease to Union Producing Company. Mr. Dunn did not join in the lease; he was dead at the time of its execution. There were no other transactions they had with Mr. Dunn precisely like this. About 1940 The Federal Royalty Company got a judgment against Mr. Dunn for about $40,000.00 and this was charged off for income tax purposes. The Federal Royalty Company never gave any kind of a release to Mr. Dunn concerning this debt. Mr. Dunn did not join in the deed because his joinder was not required, but Mr. Dunn's contingent interest was in the same nature as a lien and *it was deemed necessary to call attention to his contingent interest so that the purchaser would not be misled by thinking he was getting a clear fee simple title.* The agreement with Mr. Dunn vested in The Federal Royalty Company the exclusive right to lease or sell without his joinder. At the same time it created in him a contingent interest in the property and if the deed was executed without reference to this interest the purchaser might be in a position to claim he had been defrauded. In the witness' opinion the lessee obtained an unclouded title to the entire leasehold interest. Mr. Dunn had no vested interest in the property but his interest was conditional and contingent on The Federal Royalty Company having been returned its cost. If royalties from the lease had returned the cost, The Federal Royalty Company would have transferred Mr. Dunn his one-half interest in any succeeding royalties

and paid him one-half of any amount received over and above cost. Federal Royalty, in his opinion, had authority to sell for less than $1500.00 without Mr. Dunn's consent. After the $40,000.00 debt was charged off, Federal Royalty forgot about it and paid him money in connection with other transactions. At the time of the conveyance to appellants the Schweinle property was considered worthless, having perhaps a nominal value. Appellants paid $11,111.00 for all the properties conveyed and there was no allocation of this to any particular properties. Federal Royalty and appellee never had any accounting. The witness had talked to Mr. Dan Flowers and Mr. Fort Flowers and told them he understood the property had now paid the $1500.00 and Mrs. Dunn would now be entitled to her contingent interest. Mr. Flowers brought up Mr. Dunn's old debt. The witness told Mr. Flowers this had been charged off and further that this would be an account receivable which was expressly withheld by Federal Royalty Company. Federal Royalty, at the time of the deed to appellants, did not give a deed to Mrs. Dunn because the $1500.00 had not been paid off. He never had any conversation with a representative of the National Bank of Commerce specifically relating to this property. In the witness' opinion the interest of L. H. Dunn continued so long as The Federal Royalty Company or any of its assigns had an interest in the property. The interest of The Federal Royalty Company terminated with the deed to appellants subject to the interest of L. H. Dunn. If the deed had not provided for Dunn's contingent interest, the grantee might have been in a position to claim it was an innocent purchaser for value. "It was my intent," the witness testified, "that if the Federal Royalty Company or its successors ever received $1500. from that property and had a continuing interest in it Mr. Dunn was to receive one-half of that interest." The witness testified it was not his intention to wipe out Mr. Dunn's interest by any kind of subterfuge. The last paragraph of the agreement gave Fed-

eral Royalty the right to sell the property "as if it were owned exclusively by us, but subject to our obligation to Mr. Dunn to give him a one-half interest after we received the return of $1500." The witness testified that at the time he drew the agreement he intended that Mr. Dunn would have an interest that ran with the land.

Appellants' position seems to be that the agreement merely created obligations between Federal Royalty Company and Dunn that were personal as between them; that Federal Royalty merely covenanted to pay Dunn one-half of the profits from the land. They say it was intended this right was a personal one in Dunn and was not intended to benefit his heirs or successors since the terms "heirs" or "successors" were not used. They say it was not a covenant running with the land. Further they say the deed to them from Federal Royalty Company merely provided they took "subject to" the agreement and they did not thereby assume the obligation to pay one-half of the net profits from the land. They equate this situation with the instance where a purchaser of land covered by a mortgage lien takes the land under a deed reciting the conveyance is "subject to" the mortgage. In such case the purchaser does not assume the obligation to pay the indebtedness secured by the mortgage. They do not deny the validity of the agreement as between Federal Royalty and Dunn. However, they seek to go behind the deed into them which recited they took the 192 plus acres "subject to the agreement" and show there had been a release by Dunn of his interest before thy took subject to.

Appellee says she does not think the agreement created covenants running with the land but this does not matter because by taking the land "subject to" the agreement this was a qualification on the interest received by appellants. She also contends that appellants because of the deed into them cannot go behind the deed. Even though only personal obligations may have originally been created the deed accepted by appellants was an assumption by them of the obligations of the agreement. Her position is that the acceptance of the deed with this provision recognizes that the agreement is at that time a valid and existent obligation.

The trial court's judgment decrees that Mrs. Dunn is entitled to one-half of the profits having accrued and to accrue from and after appellants have recovered $1500.-00 income from the property in accordance with the "net profits" agreement. The court does not state the basis of such conclusion, that is, whether Mrs. Dunn is entitled to one-half of the net profits because appellants assumed a personal obligation to pay that portion of the profits or whether the agreement itself gave Mr. Dunn a one-half interest in the land, burdened with the $1500.00 advanced to Mr. Dunn by Federal Royalty to pay for his interest in the land. If Mr. Dunn had a one-half interest in the land, it would follow that he would be entitled to one-half of the income from the oil and gas production that was from the land. In this connection we note that Mrs. Dunn in her third amended original petition alleges that the agreement of October 12, 1937, granted Mr. Dunn a one-half interest in the land. However, the briefs do not discuss this.

Here we have an appeal from a summary judgment. In determining whether such a judgment should be granted the court must determine whether there is any issuable fact. In determining this every reasonable inference is to be drawn favorably to the party resisting the motion. Every doubt as to the existence of a fact issue is to be resolved against the movant. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929; Stewart v. Malek, 338 S.W.2d 501 (CCA), ref.

While appellants say they do not seek to attack the validity of the agreement, they apparently mean they admit that there was at one time a valid agreement between Mr. Dunn and The Federal Royalty Com-

pany. However, they attack its existence at the time of the conveyance to them by asserting there had theretofore been a release and also that it was barred by laches and limitation. The rule is that where a person takes a conveyance of land and in the deed into him, which is accepted by him, it is recited that he takes it subject to some contract he thereby admits its existence and its validity as of that time. He cannot attack its validity because he has acknowledged its valid existence as of that time and as a part of the consideration has contracted to honor it. J. P. Wooten Motor Co. v. First Bank of Swenson, 281 S.W. 196 (Comm.App.); Rice-Stix Dry Goods Co. v. First National Bank of McGregor, 231 S.W. 386 (Comm.App.); McMullan v. San Antonio Joint Stock Land Bank, 78 S.W.2d 669 (C.C.A.), writ ref.; Lowe v. Ragland, 156 Tex. 504, 297 S.W.2d 668; Loeffler v. King, 149 Tex. 626, 236 S.W.2d 772.

In Lowe v. Ragland, in interpreting the effect of the cases where a grantee takes subject to a mortgage, the Supreme Court said:

> "Although the mortgage, being void, entails no risk of a deficiency judgment on the part of the grantor-mortgagor, and the practical result of the rule is simply to keep the grantee from getting a better bargain than perhaps he thought he was getting or to cause the grantor-mortgagor to have a less favorable bargain than conceivably he might have made with the grantee, *the latter is yet held to have contracted an obligation to respect the mortgage and which he will not be heard to repudiate.*" (emphasis supplied)

The Lowe v. Ragland case involved a deed conveying land that said the conveyance was made "subject to" three other specified deeds. The court, citing Loeffler v. King, supra, held the same rule applied as in mortgage cases.

■ There was, therefore, no issuable fact as to whether there had been a release by Mr. Dunn of his rights or whether he was barred from asserting them by a lapse of time prior to the conveyance to appellants. The suit was filed within four years after the conveyance into appellants.

Neither was there an issue of fact as to whether appellants were entitled to assert an offset or counterclaim because of alleged debts Mr. Dunn owed the Federal Royalty. The undisputed testimony of Mr. Handy, a disinterested witness who handled the transfer to appellants, who could in no conceivable way be said to have any possible liability, established the debts of Mr. Dunn were accounts receivable and were retained by Federal Royalty. Certainly appellants were, at least through their representatives, parties to the transaction, and in a position to file controverting affidavits if Mr. Handy's testimony was untrue.

■ It is urged that summary judgment should not have been rendered because appellee failed to establish the land described in the deed was the same land described in the agreement of October 12, 1937. We think this is established by the deed itself. The land described in appellee's petition is the same as that described in the deed into appellants and the deed expressly states that the described land is subject to the agreement.

■ The deed into appellants was sufficiently proven by the deposition of Mr. Handy. A copy does there appear but the deposition shows appellants' counsel introduced the original and that a copy was to be substituted.

It is urged appellee failed to prove she was entitled to prosecute the suit because the alleged copies of Mr. Dunn's will and the order admitting it to probate attached were not the originals or certified ones. Rule 166-A expressly provides that sworn or certified copies of all papers shall be attached to the motion. There was no sworn motion for summary judgment here and no affidavit supporting these alleged

copies. This was raised in the trial court by appellants' reply to the motion for summary judgment. There was, therefore, not sufficient proof to show Mrs. Dunn's ownership and the judgment must be reversed. Gardner v. Martin, 162 Tex. 156, 345 S.W. 2d 274; Butler v. Davy Crockett Fed. Sav. & Loan Ass'n, 363 S.W.2d 390 (C.C.A.), error dism.

We now reach the question as to what the agreement amounted to. We have noted appellee pled the agreement in consideration for services rendered conveyed a one-half interest in the land. Then there is reference to the agreement as being a net profits agreement. Of course, if Mr. Dunn received a one-half interest in the land he would be entitled to one-half of the profits. In the state of the record we are unable to say as a matter of law just into what legal category the relation created would fit. However, in the light of the record we feel the inference could be drawn that there was a resulting trust with legal title in The Federal Royalty Company with the beneficial title in Dunn. The legal title would also be held to secure the $1500.00 if this amount was loaned to Dunn. Bogert on Trusts, Second Edition, Sec. 455. We are unable from the record to determine whether this was loaned to him to purchase a one-half interest or whether the purchase price was paid by Federal Royalty and Dunn's interest was to result from his services in bringing the land to Federal Royalty and he was to have a one-half interest after the Company had been reimbursed for its purchase price. If Federal Royalty advanced the money on its own behalf to purchase the land, then we think the agreement was one that upon reimbursement the Company would hold title jointly for itself and Dunn. It might be referred to as an agreement, based upon a sufficient consideration, to hold title in trust upon the happening of a contingency, that is, upon its being reimbursed its cost. It might be called an agreement to create a trust upon the happening of this contingency. Even if title were not automatically vested upon the happening of the contingency, nevertheless equity would enforce the agreement by declaring the Company held in trust for Dunn. Bogert on Trusts, Second Edition, Sec. 112, pp. 508–509. Looking at the agreement, assuming the Company was paying the full purchase price, we think it was an agreement to hold title in trust for Dunn when it was reimbursed because it provides "thereafter (that is, after reimbursement), you are to be carried for and own one-half (½) interest in the land."

Appellants seem concerned that they might be called upon to perform some act under the agreement when they did not assume to do so. Under the above view they are not required to do anything. They, assuming the realization from the land of $1500.00, merely held title to one-half as trustee. They by taking subject to this agreement have recognized that they will hold as trustee when they have realized $1500.00. Whether it be a resulting trust or an agreement to hold property in trust, the result is the same, that is, Dunn's successors would be entitled to one-half interest in the profits.

The last paragraph in the agreement gives us no difficulty. It merely created authority in Federal Royalty to sell or lease without Dunn's joinder.

The judgment is reversed and the cause remanded.

### On Motion for Rehearing

On original disposition of this case we reversed and remanded the case because it did not appear that certified or sworn copies of Mr. Dunn's will and the order admitting it to probate were in evidence. We have now been furnished with the original of appellee's Third Amended Original Petition and attached to it as a part thereof are requisite certified copies. This being the only ground of reversal, the question arises as to the judgment now to be rendered.

We held that the trial court's judgment finding that appellee was entitled to one-half of the net profits after appellants had recouped $1500.00 was supported under the uncontroverted evidentiary facts either on the basis of a resulting trust or an agreement to create a trust based on an adequate consideration. The court did not state on which theory he based his judgment. The depositions, affidavits and pleadings will support either theory, depending on inferences drawn by the trier of the facts. No reasonable inference may be drawn, however, that would support any position taken by appellants. The result is that the court was correct in its judgment in favor of appellee.

Appellee's motion for rehearing is granted. Our judgment reversing the cause is set aside and the judgment of the trial court is affirmed.