Willis A. McVEY, et al., Appellants,

v.

Dorothy HILL, Executrix of the Estate of P.J. Laurito, Appellee.

No. 14216.

Court of Appeals of Texas, Austin.

May 1, 1985.
Rehearing Denied May 29, 1985.

John E. Gangstad, Brown, Maroney, Rose, Barber & Dye, Hector DeLeon, DeLeon & Boggins, Austin, for appellants.

Michael E. McElroy, McElroy, Williams & Sullivan, Austin, for appellee.

Before SHANNON, C.J., and EARL W. SMITH and BRADY, JJ.

BRADY, Justice.

Appellants appeal from a summary judgment rendered against them. The judgment awarded Dorothy Hill, Executrix of the Estate of P.J. Laurito, $69,450.00 plus attorney's fees for alleged wrongful interference with the operation of an oil well on a lease in Bastrop County.

In 1947, P.J. Laurito acquired an oil and gas lease on 334 acres of land in Bastrop County. The lease was for a primary term of ten years after which the lease was allegedly extended by production of oil or gas in commercial quantities. The lease contained a provision that if, after the primary term, production on the leased premises shall cease, lessee shall have a period of sixty days from the stopping of production within which "to commence operations for the drilling of another well, deepen an existing well or wells or otherwise to attempt to restore the production of such existing well ... and if such work is commenced and prosecuted with reasonable diligence and production results therefrom, this lease shall remain in force as long as production continues."

In 1968, one of the appellants, McVey, acquired, by assignment from the Texas Veterans' Land Board, contract rights to purchase some 92 acres out of the 334 acre-tract on which Laurito had his oil lease. Shortly after his purchase, McVey claimed that the lease had terminated because there were "gaps" in production of sixty days or more during various periods from 1957 through 1967. In April 1968, appellant advised Laurito that the well should be plugged. McVey also advised Scurlock Oil Company, the purchaser of the production, of the assignment that he had acquired from the Texas Veterans' Land Board. McVey, thereafter, told two of Laurito's employees who had been reworking the well that they were trespassing. Subsequently, McVey installed a gate across the access road to the well, locked it, and hired Bill Moss to prevent Laurito or his employees from gaining access to the well. McVey denies he placed a lock on the gate. At one time, appellees found that belts had been cut from the pumpjack and the motor had been cut off.

This litigation, originally a quiet title suit, goes back over many years and was previously before this Court on a question of joinder of parties. *See, Laurito v. McVey*, 496 S.W.2d 656 (Tex.Civ.App.1973, no writ). In 1982, appellee sought declaratory relief regarding the propriety of appellants' actions and her rights under the lease. Based on the affidavits and other summary judgment proof, the trial court on March 7, 1983, granted the estate a partial summary judgment declaring that the lease remained in full force and effect, that appellant McVey by his acceptance of the contract assigned to him from the Texas Veterans' Land Board was subject to the previously recorded lease, and that by his acceptance of the contract ratified the lease as a matter of law. The trial court further declared that appellant McVey had both actual and constructive notice of the rights of Laurito under the oil and gas lease and that by willfully and wrongfully interferring with the operation of the lease repudiated the rights of appellee. Thus, on September 26, 1983, the trial court entered a final judgment for $69,450.00 as damages against McVey for the wrongful acts of McVey in interfering with and repudiating the lessee's rights. Additionally, the trial

court assessed attorney's fees of $6,467.00. We will reverse the trial court's judgment.

Appellants argue five points of error, *inter alia*, that the trial court erred in granting the partial summary judgment that the lease was in effect, that McVey ratified it, and that he wrongfully interfered with the access to and operation of the lease. Finally, the appellants contend that there was no evidence to support the elements of damages found by the court and that Tex.Rev.Civ.Stat.Ann. art. 2226 (Supp.1985) does not support the award of attorney's fees. The thrust of appellants' argument is that since the estate had come into court requesting a declaration that the lease was in effect, the burden of proof was on appellee to prove the lease had not terminated. Under the terms of this lease, after the end of the primary ten year term in 1957, cessation of production for any cause resulted in termination of the lease unless within the sixty day period operations to restore production were commenced and prosecuted with reasonable diligence.

At oral argument, appellee conceded that it was her burden to prove continuous production in order to prevail in having the lease declared in effect. Appellee further conceded that the summary judgment proof did not conclusively establish that production was continuous because the affidavits and Railroad Commission records showed gaps in production which were longer than sixty days, and that such cessations were not sufficiently explained by other supporting affidavits.

Appellee asserted, however, a separate ground for her motion for summary judgment. This ground involved McVey's acceptance of the assignment of contract on February 13, 1968, as constituting a ratification of the lease. It is appellee's contention that any gaps in production which may bear on the issue of inadequate summary judgment proof are irrelevant. This is based upon appellee's argument that the lease was ratified after February 13, 1968. Appellants argue that ratification does not apply because the summary judgment proof fails to establish that McVey signed any document which intended to recognize the validity of the Laurito lease.

A primary issue before this Court is whether the doctrine of ratification is applicable to the facts in this case. In order that we may come to a proper disposition of this appeal we feel it necessary to give a fair discussion concerning the several cases appellee cites in support of her argument. Before beginning our discussion, we observe that appellants' brief indicates that ratification may not be the proper vehicle through which appellee can seek relief. Appellants' claim is that where the lease involved has terminated by limitation in the grant itself, the applicable doctrine is "revivor" since that doctrine involves the granting of a new estate in land. *See Hunt Oil Co. v. Moore,* 656 S.W.2d 634 (Tex.App. 1983, writ ref'd n.r.e.); *see also Revival and Ratification of Leases-Synonym or Antonym? Westbrook v. Atlantic Richfield Company,* 26 Baylor L.Rev. 455 (1974). In such a case, appellants argue, the new estate should not be held to have been granted without a showing of a clear intent to grant it. *See United Parcel Service v. Helen of Troy,* 536 S.W.2d 415 (Tex. Civ.App.1976, no writ). Regardless of the applicable doctrine, appellants urge that they neither ratified nor revived the lease because the assignment of contract fails to describe or to refer to the Laurito lease sufficiently to evidence an intent to revive the lease. Appellee, however, maintains that the doctrine of ratification is applicable in this case.

The provision in the assignment of contract at issue contains the following language, "To have and to hold the same unto the said Assignee (McVey), his heirs, executors, administrators and assigns forever, subject to the terms, conditions and stipulations embodied in said contract of Sale and Purchase ..." In turn, the Contract of Purchase provides, "This contract is subject to any reservations or exceptions set out in the Deed or Deeds by which this land was conveyed to the Veterans Land Board." The record reveals that one such

deed contains certain references to royalty rights in the Laurito lease and to the Laurito lease itself. At the time the deed was executed, the primary term of the Laurito lease had not yet expired. It is unclear, however, if the lease was in full force and effect at the time McVey accepted the assignment of contract. It is appellee's contention that the above provisions in the various instruments form the basis for her claim that ratification of the Laurito lease occurred, notwithstanding gaps in production, by appellants' acceptance of the assignment of contract.

Appellee cites several cases in support of her argument. We observe, however, that all of these cases are distinguishable. In *Cockrell v. Texas Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672 (1956), the Court determined the effect of a provision in a deed which made it subject to the terms and conditions "of each and all of the *existing* leases and conveyances." (emphasis ours). The Court observed that the parties proceeded on the premise that the leases at issue were in full force and effect at the time the deed was executed. Thus, the "subject to" clause in the deed acted to define the nature, extent and character of the estate conveyed. *Id.* Because the clause was in the chain of title received by the grantee of the deed, its successors in title could not disregard these provisions. *Id.* This case is distinguishable in at least two respects from the case at bar. In *Texas Gulf Sulphur,* the issue of ratification was not before the Court. Furthermore, the parties in that case stipulated that the leases in question were in full force and effect at the time the deed was executed.

Appellee cites *Freeman v. Southland Paper Mills, Inc.*, 573 S.W.2d 822 (Tex.Civ. App.1978, no writ) for the proposition that a "subject to" clause within a deed incorporates any prior instruments into the deed. The *Southland* case involved a controversy over the construction of a surface deed. The mineral estate in that case had been severed from the surface estate. The surface owner had acquired certain mineral interests during this transaction. The case involved a trespass to try title action. The argument was advanced that the surface owner was required to prove that the property had not been previously conveyed. The language within the surface deed at the heart of the controversy stated: "This conveyance is expressly made subject to any leases or other instruments heretofore executed by Grantor ..." *Id.* at 823. The Court of Appeals correctly held that this "subject to" clause merely renders the conveyance subject to any leases or other instruments affecting the land. *Id.* In our view, such a clause refers to encumbrances and incorporates such prior instruments only if they are valid and existing. It is important to note, moreover, that in *Southland,* the court was not confronted with the issue of ratification.

Under Texas law, appellee argues that McVey is charged with notice of all prior instruments filed in the records of the Bastrop County clerk's office. The case of *National Bank of Commerce of Houston v. Dunn,* 381 S.W.2d 654 (Tex.Civ.App. 1964, writ ref'd n.r.e.), is cited for the proposition that:

> [W]here a person takes a conveyance of land in the deed into him, which is accepted by him, it is recited that he takes it subject to some contract he thereby admits its existence and its validity as of that time. He cannot attack its validity because he has acknowledged its valid existence as of that time and as a part of the consideration has contracted to honor it.

*Id.* at 662. In that case, however, the deed at issue also contained the following language: "the above described interest is subject to an unrecorded net profit agreement dated October 12, 1937 ..." *Id.* at 656. This is clearly the distinguishing factor between the *Dunn* case and the case at bar. In the *Dunn* case there was a specific reference to a specific agreement. We are not presented by an analogous fact situation in the case at bar in that the assignment of contract fails to contain a specific reference to a specific obligation or contractual agreement.

Appellee relies further upon *Adams v. Duncan,* 147 Tex. 332, 215 S.W.2d 599

(1948). We observe, however, that the *Duncan* case involved certain grantees of property who accepted and recorded their deed and later attempted to contest the validity of the same deed. Obviously, by accepting a deed, recording the instrument and subsequently using it to prove record title, a grantee cannot be heard to say that he is not bound by its contractual obligations.

In reliance on *Loeffler v. King*, 149 Tex. 626, 236 S.W.2d 772 (1951), appellee asserts that by accepting the assignment of contract, appellant ratified the lease and gave it new life, even if it had in fact terminated. The deed in *Loeffler*, however, contained the following language: "It is distinctly understood and herein stipulated that said land is under an Oil and Gas Lease ... providing for a royalty of ⅛ of the oil and certain royalties or rentals for gas and other minerals." *Id.* 236 S.W.2d at 774. The lease sought to be ratified was originally executed by the grantor and grantee of the deed. Thus, by the execution and acceptance of the royalty deed the parties ratified and gave life to the previously expired lease. It is also noteworthy that the deed in *Loeffler* specifically made reference to an oil and gas lease. This is not the situation in the instant case.

■ With reference to *Westland Oil Development Corporation v. Gulf Oil Corporation*, 637 S.W.2d 903 (Tex.1983), appellee asserts that the "subject to" language in the assignment of contract binds appellants to the terms of the lease in question. This is an apparent effort to argue that McVey is charged with notice of the contents of the lease and that this somehow ratifies the lease. We agree with the rule announced in *Westland*. There is, however, a significant distinction between that case and the instant case. In *Westland*, the Court held that certain individuals were charged with notice of an equitable claim of another, and could not thereby enjoy the status of innocent purchasers. *Id.* at 908. In the instant case, all that McVey could be charged with was notice that a lease was in his chain of title. The question of whether it was a lease which was still in force was not decided by McVey's acceptance of the assignment of contract. In our judgment this did not ratify the lease.

■ The rule of ratification is well established. The subsequent execution of a formal document must expressly recognize in clear language the validity of an expired instrument to create a ratification. *Westbrook v. Atlantic Richfield Co.*, 502 S.W.2d 551 (Tex.1974); *Loeffler v. King, supra.* We do not attempt to unravel any apparent confusion involved in the distinctions, if any, between ratification and revivor. The only question raised by this appeal is whether, by appellants' acceptance of the assignment of contract, a ratification of the Laurito lease resulted. We hold that it did not. The assignment of contract which the appellants received from the Veterans Land Board contains no clear language recognizing the validity of the lease in controversy. Appellee's argument that the "subject to" language in McVey's assignment of contact results in a ratification of the lease finds no support in the law. Appellants' second point of error is overruled.

Since appellee concedes that the summary judgment evidence is insufficient to have the lease declared in effect, we will reverse the judgment of the trial court and order the cause remanded for a trial on the merits.