Lewis L. BRADLEY, Jr., et al., Appellants,

v.

Charles N. AVERY, Jr., et al., Appellees.

No. 3–87–160–CV.

Court of Appeals of Texas, Austin.

Feb. 24, 1988.

Leland R. Enochs, Mr. Randall J. Pick, Barkley & Enochs, Taylor, for appellants.

Emory C. Camp, Ellett, Camp, Magre, Glaser & Lance, Rockdale, for appellees.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

SHANNON, Chief Justice.

Appellants Lewis L. Bradley, Jr. and William J. Bradley filed a declaratory judgment suit in the district court of Milam County seeking a declaration that an oil and gas lease terminated due to a cessation of production. After a bench trial, the court rendered judgment that appellants take nothing. This Court will reverse the judgment.

In 1925, J.P. and S.J. Kevil, owners of fee simple title, executed an oil and gas lease covering one hundred acres of land in Milam County. The lease contained a provision that "failure of Lessee to continue production without interruption from any such well or the failure to pay such royalties, shall terminate the Lease as to such well." Appellants succeeded to all of the right, title, and interest of the Kevils in and to the said one hundred acres.

H.H. Coffield acquired an interest in part of the original one hundred acre lease in 1949. Sometime after the assignment to Coffield, production from three of the lease's four oil wells ceased and those wells were abandoned. Continued production from the remaining well, Kevil 1, maintained the lease. On August 1, 1981, the Independent Executors of the Estate of H.H. Coffield, Deceased and Minerva Refining Company assigned the estate's interest in the lease to Cornell Oil Company. Under the authority of the original lease and the assignments, Cornell Oil Company produced oil from the leasehold's one remaining well, Kevil 1, and reported production through July of 1982. Without any apparent reason, production ceased by August 1, 1982, and no production was reported from said lease until October of 1982.

On September 1, 1982, Cornell Oil Company executed a reassignment of the lease to the Estate of H.H. Coffield and Minerva Refining Company. Sometime during the latter part of September or early October 1982, the new lessees initiated workover operations on Kevil 1. Eventually, production of oil resumed and was first reported in October of 1982.

On April 1, 1983, appellants executed division orders to the Estate of H.H. Coffield for oil produced after October 1, 1982. Appellants negotiated royalty checks paid by appellees subsequent to April 1, 1983. Appellees have continued to produce oil and/or gas from the lease to the date of the filing of this suit.

By their suit appellants sought a declaration that the lease terminated due to a

cessation of production from August 1, 1982 to October of 1982. Appellants further sought an accounting of all oil, gas or other mineral production from the subject property from June 25, 1982, to the date of judgment. The district court rendered judgment that appellants take nothing.

Upon request, the district court filed original and amended findings of fact and conclusions of law. Among other things, the district court found that from August 1, 1982, until October 1, 1982, no oil or gas was produced from the property in question. The court determined further that the reason for the cessation of production was "uncertain." During the latter half of September 1982, appellees initiated workover operations on Kevil 1 and continued such operations until paying production was restored in October 1982. In April 1983, appellants executed a royalty division order to the estate of H.H. Coffield.

The district court concluded that cessation of production in 1982 was temporary and not permanent and was not of such duration as to terminate the lease. The court concluded further that appellants' execution of the division order after there had been a cessation of production ratified appellees' leasehold interest.

By two points of error, appellants attack the district court's conclusion that the cessation of production from the lease between August 1, 1982 and October 1, 1982, did not terminate the lease. If an oil and gas lease provides for a primary term and the continuation of the lease "as long thereafter as oil or gas is produced therefrom," cessation of production, after termination of the primary term, automatically terminates the lease. *Watson v. Rochmill,* 137 Tex. 565, 155 S.W.2d 783 (1941).

The pertinent clause of the lease in this appeal contains no language that either expressly or by implication extends the lease after a period of nonproduction following the expiration of the primary term. The language of the clause provides for a continuation of the lease only "so long as Lessee shall continue to produce oil and gas ... but the failure of Lessee to continue production *without interruption* from

any such wells ... shall terminate this Lease...." (emphasis added).

■ The rule is relaxed if the lessee can prove only a temporary cessation of production due to sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith or a like cause. *Amoco Production Co. v. Braslan,* 561 S.W.2d 805 (Tex.1978); *Midwest Oil Corp. v. Winsauer,* 323 S.W.2d 944 (Tex.1959); *Watson v.· Rochmill, supra.* Under such circumstances, the lease does not automatically terminate, but instead the lessee is entitled to a reasonable time in which to remedy the defect and resume production. *Watson v. Rochmill, supra.*

■ The lessee did not prove that the temporary cessation in this appeal resulted from a sudden stoppage of the well or some mechanical breakdown of the equipment. In point of fact, the district court determined only that the cause of cessation of production was "uncertain." In our opinion, the lessee failed to discharge its burden. The district court's finding that the cause of cessation of production was "uncertain" will not support the court's conclusion of law that "the cessation of production in 1982 was temporary and not permanent and was not of such a duration as to terminate the lease causing an expiration of same." Appellants' points of error are sustained.

■ Appellees further defend the judgment by arguing that the district court correctly concluded that appellants *ratified* the lease by their execution of the division order after the time of cessation of production.

As a preliminary matter, this Court recognizes appellants' observation that there is confusion in Texas law concerning the distinction between the doctrines of ratification and revivor, with the terms sometimes being used interchangeably. *See Westbrook v. Atlantic Richfield Co.,* 502 S.W.2d 551 (Tex.1974); *McVey v. Hill,* 691 S.W.2d 67 (Tex.App.1985, no writ); 2 Williams and Meyers, *Oil and Gas Law,* § 340.04 (1986); Bond, *Revival and Rat-*

*ification of Leases–Synonym or Antonym?;* 26 Baylor L.Rev. 455 (1974).

Williams and Meyers suggest the following view:

> The courts seem to take the position that if there was an intent to pass the interest originally and there is a dispute as to the necessary formalities, a later reference by the grantor to the instrument as a valid grant is sufficient to ratify it. In other words, there is a waiver of the defense as to the lack of necessary formalities in the execution and delivery of the instrument.
>
> On the other hand, where the original grant was concededly effective, but the interest granted has terminated by reason of the limitation in the grant itself, application of the doctrine of revivor involves the granting of a new estate in the land.

2 Williams and Meyers, *Oil and Gas Law,* § 340.04, at 256 (1986).

Appellants contend, accordingly, that the facts of the present appeal fall within the doctrine of revivor thereby requiring the division orders to contain a clear intent to grant a new estate in land. *Id.* Appellants point out correctly that the division orders do not contain a legal description of the property, do not contain language granting an estate in land, and do not even refer to the oil and gas lease. Accordingly, appellants maintain that the division orders are not the clear manifestation of intent to create or convey an estate in realty that is required to "revive" an interest that has terminated.

According to Williams and Meyers, in the absence of an express grant, a terminated oil and gas lease may be revived by the mere execution of division orders only if detrimental reliance is found on the part of the lessee. 4 Williams and Meyers, *Oil and Gas Law,* § 709 (1986). Appellants remind this Court that the district court failed to find that appellees relied in any way to their detriment on the division orders signed by appellants. Further, there was no evidence that appellees relied on the division orders. The division orders, in fact, were executed on April 1, 1983, subsequent to appellees' reworking the well and restoring production in October 1982.

Although this Court recognizes the logic in support of appellants' position, the parties and the district court did not try the suit pursuant to the doctrine of revivor as explained by Williams and Meyers. In that connection, appellees pleaded that appellants, by executing the division orders after the cessation of production, "ratified" the oil and gas lease. Likewise, the district court concluded that appellants "ratified" the lease by executing the division orders.

As previously observed, the terms "ratification" and "revivor" are used interchangeably in the opinions. In *McVey v. Hill,* 691 S.W.2d 71 (Tex.App.1985, no writ), this Court was confronted with a claim that a lease that had allegedly expired *by a cessation of production* had been "ratified" by the appellants' subsequent acquisition (by assignment from the Veterans Land Board) of the contract rights to purchase part of the acreage covered by the lease. From the perspective espoused by Williams and Meyers, "revivor," rather than "ratification," would have been the appropriate theory to apply under the facts in *McVey* (as well as the instant appeal). In *McVey,* this Court applied the doctrine of ratification and held that this doctrine requires the subsequent execution of a formal document that "must expressly recognize in clear language the validity of an expired instrument." *McVey,* 691 S.W. 2d at 71.

This Court in *McVey* relied on *Westbrook v. Atlantic Richfield Co.,* 502 S.W.2d 551 (Tex.1974). The problem before the Court in *Westbrook* involved a claim by the lessee Atlantic Richfield that a lease that had expired *due to the failure to pay delay rentals* had been revived or ratified by the subsequent ratification by the lessors of a fieldwide Unit Agreement and fieldwide Unit Operating Agreement. *Id.* at 552–53. The Supreme Court noted that the Unit Agreement did not ratify the lease because of clear provisions in the Unit Agreement that said agreement could not serve as a basis for ratification of previously expired leases. *Id.* at 554. Furthermore, the Operating Agreement could not have ratified

the lease because provisions in the Unit Agreement stated that in the event of conflict between the two agreements, the Unit Agreement was to govern. *Id.*

The Court held that the language in the Operating Agreement would not have served as the basis for ratification of the lease "even without the conflict provision of the Unit Agreement." *Id.* at 554–55. The Operating Agreement did contain a provision that recognized the lessee Atlantic as working interest owner of "Tract 548," which included the lease in question. *Id.* The Supreme Court held, however, that this was not "sufficient reference to the ... lease to revive it.... The subsequent execution of a formal document even to a third person *which expressly recognized in clear language* the validity of the lifeless deed or lease has been held to give it life. There is no direct statement of ratification in words clear or otherwise. Nor is there any inference of validity of the ... lease or *even of its existence.*" *Id.* at 555–56 (emphasis in original). *See Hastings v. Pichinson,* 370 S.W.2d 1, 4 (Tex. Civ.App.1963, no writ).

The division orders in this cause do not refer to the lease. Given the nature of those orders, the district court mistakenly concluded that their execution "ratified" the lease.

The judgment is reversed and judgment is here rendered declaring the oil and gas lease terminated.