EXPLORACION DE LA ESTRELLA SOLOATARIA INCORPORACION et al., Appellants,

v.

Beryl BIRDWELL and Rosalie McGlaun, Appellees.

No. 11–92–253–CV.

Court of Appeals of Texas, Eastland.

July 1, 1993.

Richard D. Davis, Midland, for appellants.

David Cotton, Cotton & Cotton, Snyder, Richard P. Marshall, Jr., Steve Selby, Scott, Douglass & Luton, Austin, for appellees.

## OPINION

ARNOT, Justice.

This is an appeal from a declaratory judgment canceling two oil and gas leases because of cessation of production after the primary term and for failure thereafter to conduct timely and continuous reworking operations. We affirm.

On September 14, 1987, Beryl Birdwell, as lessor, executed an oil and gas lease to John Vickers, as lessee, covering the east 180 acres of the south one half of Section No. 177, Block No. 97, H & TC Ry. Co. Survey, Scurry County. The Vickers lease provided for a three-year primary term and contained the following continuous operation provision:

> [I]f, after discovery of oil, gas or other minerals, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences addition-

al drilling or reworking operations within sixty (60) days thereafter, or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three (3) months from the date of completion and abandonment of said dry hole or holes or the cessation of production.

On September 14, 1987, Rosalie McGlaun along with Beryl Birdwell, as lessors, executed an oil and gas lease to Rodger D. Allen, as lessee, covering the west 140 acres of the south one half of Section No. 177, Block No. 97, H & TC Ry. Co. Survey, Scurry County. The Allen lease, on a Producer's 88 Revised 9–64 lease form, provided for a primary term to expire on May 20, 1988. The Allen lease contained an identical continuous operation provision as included in the Vickers lease.

Mrs. Birdwell and Mrs. McGlaun brought a declaratory judgment suit seeking cancellation of the above leases because of the cessation of production, the failure to resume paying delay rentals within the primary term, and the failure to commence reworking operations within the 60–day time period. The pleadings alleged that Exploracion De La Estrella Soloataria Incorporacion (Spanish for Lone Star Exploration Incorporated) owned all of the working interest in the Vickers lease subject to a reservation of a leasehold interest (commonly called a working interest) which would vest after payout in Robert H. Rex and John Vickers. The pleadings also alleged that Mamie Jo Cope owned an overriding royalty interest in this lease. Marquis Petroleum, Inc. and Exploracion were alleged to have owned all the working interest in the Allen lease subject to the after payout interest of Rex and Vickers and the overriding royalty interest of Mamie Jo Cope. After appellants had filed their amended answer, Vickers and Rex each filed disclaimers as to any interest they might have owned in the leases.

At trial, appellants asserted that there had been continuous production and, alternatively, that there had been reworking operations that perpetuated the leases.

Also, appellants contended that, by execution of division orders, Mrs. Birdwell and Mrs. McGlaun, as lessors, had revived the leases. Further, Exploracion urged that, because of the lessors' repudiation of their leases, it, as operator, was excused from conducting further operations on the leases.

The trial court found in its Finding of Fact No. 4 that the Vickers lease terminated on September 14, 1989, because of the cessation of production and in its Finding of Fact No. 6 that the Allen lease terminated on May 20, 1988, because of the cessation of production.

■ Because the discussion is germane to a full understanding of the underlying dispute and the other points, we will first address appellants' sixth and seventh points of error complaining that, as a matter of law, the evidence establishes that there was production for the time periods from November 1989 through June 1990 and that, as a matter of law, there were work-over operations performed on the leases that would have perpetuated the leases.[1]

■ Karl Thiel, District Director for the Texas Railroad Commission, testified that there was one producing well on the Vickers lease. The operator of that well filed production reports with the Commission. These reports recorded production for the years 1987 and 1988; however, those reports showed no production from the years 1989, 1990, 1991, and 1992. The Commission's records showed reported production from one well on the Allen lease for 1987 and 1988 with no production reported for the years 1989, 1990, 1991, and 1992. The Commission imposed a pipeline severance on both leases and ordered both wells plugged: the well on the Vickers lease in June of 1989 and the well on the Allen lease in May of 1989.

Mrs. Birdwell said that she received royalty checks from the Vickers lease in 1987 and 1988 but did not receive any payments after that year. Mrs. McGlaun said that she received royalty payments in 1987 and 1988 from the Allen lease. Mrs. McGlaun also received one check in 1990 which was for production that occurred in 1987 or 1988 and for which the monies had been held in a suspense account by the oil purchaser.

Edward Glenn Cope testified on behalf of Exploracion and Marquis. Glenn Cope said that, in the months of September, October, November, and December of 1989, the two wells produced in paying quantities making 15 to 20 barrels of oil a month during this period. As evidence that there was production, Glenn Cope produced electrical bills for the eight months between November 1989 and June 1990 showing that the leases were supplied with and used electricity. As additional evidence that the Allen lease produced, Glenn Cope testified that the Birdwell–McGlaun well would flow without the aid of a pump but that it made more oil with a pump.

Ordinary minds could differ as to the conclusion to be drawn from the conflicting evidence of the existence of production in paying quantities. Consequently, the evidence does not conclusively establish that there was continuous production on the Vickers lease after September 14, 1989, and on the Allen lease after May 20, 1988. Appellants' sixth point of error is overruled.

■ The trial court also found in its Finding of Fact No. 4 that the Vickers lease terminated because of the absence of reworking operations on the lease for a period in excess of 60 consecutive days from September 14, 1989, and in its Finding of Fact No. 6 that the Allen lease terminated for failure to conduct reworking operations within 60 consecutive days after May 20, 1988. Appellants argue in their seventh point of error that, as a matter of law, reworking operations were conducted on the two leases that resulted in production which would have perpetuated the leases.

1. An issue is conclusively established when the evidence is such that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. *Triton Oil and Gas Corporation v. Marine Contractors and Supply, Inc.,* 644 S.W.2d 443 (Tex.1982)

Mark Glass, Mrs. Birdwell's son-in-law, testified that he was physically on the surface covered by the two leases every few weeks and that he observed no activity, either production operations or reworking operations. Glass observed that the electric motor to the pump was running but that the belts had broken and, therefore, that the pump jack was not working. Glass offered this observation as an explanation as to why Exploracion might have received electrical bills but that the bills did not necessarily mean the well was producing. Glass said that there were some heavy rains in September of 1989. During quail season, he was out on the land and saw no fresh tire tracks. Glass stated that there was no activity on the lease in 1988 or 1989.

Glenn Cope testified that work-over operations were performed on the Allen lease and produced an invoice for work-over operations from Gladco Well Service for work performed in May of 1990. Glenn Cope also produced a bill for a down-hole pump dated May 29, 1990, from Gibco Pump and Packer that was placed in this well. Glenn Cope said that Kalko Well Service performed work-over operations on the Vickers lease in November of 1988.

However, taking as an established fact that Kalko reworked the Vickers lease in November 1988, that date is some eleven months prior to September 14, 1989, the date found by the court that the Vickers lease ceased to produce. And, the Gladco Well Service reworking of the Allen lease in May of 1990 was performed more than 60 days after September 14, 1989, the date the court found that this lease had ceased to produce. Appellants have not shown that, as a matter of law, there were re-working operations conducted on the two leases within 60 days of the cessation of production. See *Samano v. Sun Oil Company*, 621 S.W.2d 580 (Tex.1981); *Sunray DX Oil Company v. Texaco, Inc.*, 417 S.W.2d 424 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.); *Bachler v. Rosenthal*, 798 S.W.2d 646 (Tex.App.—Austin 1990, writ den'd). The seventh point of error is overruled.

We will now address the first two points of error in which appellants assert that there is no evidence to prove that appellants owned the leasehold interest or overriding royalty interest.[2]

A suit to cancel an oil and gas lease has been described as a suit to quiet title. *McCurdy v. Morgan*, 252 S.W.2d 264 (Tex. Civ.App.—San Antonio 1952, no writ); *Thomason v. Ham*, 210 S.W. 561 (Tex.Civ. App.—Fort Worth 1919, writ ref'd). Although he must base his action on the strength of his own title, the plaintiff in a suit to quiet title does not have to prove superior right to the property by tracing his title to the sovereignty. *Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705 (5th Cir.1951); *Katz v. Rodriguez*, 563 S.W.2d 627 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

Specifically, appellants urge that Mrs. Birdwell and Mrs. McGlaun failed to offer any competent probative evidence of any conveyances of the leases from Vickers and Allen to appellants. We disagree. By his testimony, Glenn Cope established himself as the president of Exploracion and the sole owner of Marquis Petroleum. Glenn Cope said that, in 1987, Marquis purchased the Vickers lease from Vickers and subsequently assigned its interest to Explora-

---

2. A "no evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of the evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Marifarms Oil & Gas, Inc. v. Westhoff*, 802 S.W.2d 123 (Tex.App.—Fort Worth 1991, no writ); Calvert, *"No Evidence" and "In-sufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

In determining a "no evidence" point, we must consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Cox v. Stowers*, 786 S.W.2d 102 (Tex. App.—Amarillo 1990, no writ). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld.

cion. Glenn Cope testified at trial that his mother, Mamie Jo Cope, was the sole shareholder in Exploracion and owned all of the working interest in the two leases. The evidence is legally sufficient to prove that appellants were the owners of the leasehold and overriding royalty interest.

■ Further, appellants argue that, without evidence of the conveyances of the leasehold estate, appellees have not ensured that the proper parties are before the court for cancellation of the lease and cite *Royal Petroleum Corporation v. Dennis*, 160 Tex. 392, 332 S.W.2d 313 (1960), as authority. *Royal Petroleum Corporation* is not controlling. In *Pirtle v. Gregory*, 629 S.W.2d 919 (Tex.1982), an oil and gas case, the court held that the failure to have the proper parties before the court could not be raised for the first time on appeal. Appellants did not raise this objection at trial by exception, plea in abatement, motion to join other parties, or otherwise. Appellants' first and second points of error are overruled.

In their third point of error, appellants urge that the trial court erred in granting judgment for Mrs. Birdwell and Mrs. McGlaun because they revived the two oil and gas leases. Exploracion argues that, by virtue of executing a division order and retention of royalty payments, Mrs. Birdwell and Mrs. McGlaun, as the lessors, revived the two leases.

■ The doctrine of revival or notification holds that the subsequent execution of a formal document which expressly recognizes in clear language the validity of a lifeless lease revives the lease. *Westbrook v. Atlantic Richfield Company*, 502 S.W.2d 551 (Tex.1973); *Loeffler v. King*, 149 Tex. 626, 236 S.W.2d 772 (1951); *McVey v. Hill*, 691 S.W.2d 67, 71 (Tex. App.—Austin 1985, writ ref'd n.r.e.); George T. Bond, Note, *Revival and Ratification of Leases—Synonyms or Antonyms?*, 26 Baylor L.Rev. 455 (1974). In *Bradley v. Avery*, 746 S.W.2d 341 (Tex. App.—Austin 1988, no writ), the court, citing 4 Williams and Meyers, *Oil and Gas Law*, § 709 (1986), suggested that, in the absence of an express grant, a terminated oil and gas lease may be revived by the mere execution of division orders only if detrimental reliance is found on the part of the lessee.

■ The division orders were on forms provided by Permian (the crude oil purchaser), were dated February 7, 1990, and were signed after the cessation of production. Mrs. Birdwell and Mrs. McGlaun stated that they executed the division orders to recover monies held in suspense by the purchaser for prior production in 1987 and 1988.

In its findings of fact, the trial court found that the division orders contain no express language pursuant to which an executing party could ratify or revive the lease. Although the division order forms contained an adequate property description of the lease, the division orders did not contain language granting an estate in land or any express language that would effect a revival of the lease. Appellants have not shown that they detrimentally relied upon the execution of the division orders. *Bradley v. Avery*, supra. See also *Exxon Corporation v. Middleton*, 613 S.W.2d 240 (Tex.1981); *Simonds v. Stanolind Oil & Gas Co.*, 134 Tex. 332, 136 S.W.2d 207 (1940); *Ladd Petroleum Corporation v. Eagle Oil and Gas Company*, 695 S.W.2d 99 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.); *Texas & Pacific Coal & Oil Co. v. Kirtley*, 288 S.W. 619 (Tex.Civ.App.—Eastland 1926, writ ref'd n.r.e.). Appellants' third point of error is overruled.

In their fourth point of error, appellants complain that the lessors' repudiation of the leases relieved them from any obligation to conduct operations on the land.

■ Repudiation of a lease by a lessor relieves the lessee from any obligation to conduct any operation on the land in order to maintain the lease in force while a judicial resolution of the controversy between the lessee and lessor over the validity of the lease is pending. *Kothmann v. Boley*, 158 Tex. 56, 308 S.W.2d 1 (1957); *Cheyenne Resources, Inc. v. Criswell*, 714 S.W.2d 103 (Tex.App.—Eastland 1986, no writ). The doctrine of repudiation is a variation of the doctrine of estoppel. *Kothmann v. Boley*, supra.

Mrs. Birdwell and Mrs. McGlaun considered the leases terminated. When Exploracion reentered the leased premises and attempted to put the wells back in production, Mrs. Birdwell and Mrs. McGlaun directed their attorney to write a demand letter to appellants. On June 6, 1990, their attorney wrote appellants requesting a release of the leases and demanding that appellants cease further operation on the properties. Appellants urge that this repudiation excused their further performance under the leases.

However, for the doctrine of repudiation to apply, the lease must be subsisting. *Cheyenne Resources, Inc. v. Criswell*, supra. We have previously held that there is sufficient evidence to support the trial court's findings that the leases terminated under their own terms 60 days after May 20, 1988, and September 14, 1989. The trial court found that both leases had terminated prior to June 18, 1990, the date appellants received appellees' demand letter. Because the leases had already terminated, an excuse of performance because of the repudiation on June 6, 1990, would not perpetuate the leases. Appellants' fourth point of error is overruled.

In their fifth point of error, appellants assert that their strict performance was excused by virtue of the force majeure clause contained in the two leases. Exploracion contends that three acts of theft and vandalism prevented it from producing the leases, invoked the force majeure clause of the leases, and extended the time within which they were allowed to resume production under the terms of the leases. Exploracion complains that, before they could remedy the acts of vandalism, Mrs. Birdwell and Mrs. McGlaun repudiated their leases. The pertinent part of the force majeure clause contained in the leases is as follows:

> When drilling or other operations are delayed or interrupted by ... or as a result of any cause whatsoever beyond the control of the lessee, the time of such delay or interruption shall not be counted against lessee, anything in this lease to the contrary notwithstanding.

Glenn Cope testified: that a circulating pump was stolen from the Allen lease in May of 1989; that someone had removed several hundred barrels of oil from the storage tanks on the Vickers lease during the months of September, October, November, and December of 1989, pumping the oil back into the ground; and that the electrical power pole supplying electricity to the two leases had been pushed over by a tractor in June of 1989. Glenn Cope suggested that the surface tenant farmer may have done these acts and, as such, that the acts were beyond the control of Exploracion.

The trial court found that these acts would not have invoked the force majeure clause. Assuming without agreeing that the force majeure clause did apply, Exploracion has not shown that its delays in resuming production were justified. The circulating pump was stolen in May of 1989 from the Allen lease, but the lease had previously terminated in May of 1988. Oil from the Vickers lease was reinjected in December of 1989, but that lease had terminated for lack of production in September of 1989. Unlike the acts of theft in *Casey v. Western Oil and Gas, Inc.*, 611 S.W.2d 676 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.), theft or reinjection of the oil did not prevent Exploracion from resuming production of the lease. Power was discontinued to both leases in June of 1989, 3 months before the Vickers lease terminated and 13 months after the Allen lease terminated. The leases were repudiated in June of 1990, one year after the pump was stolen, six months after the oil was reinjected, and one year after the power was disconnected. Exploracion has not shown any justification for the unexplained delays in returning the leases to producing status. The force majeure clause, if applicable, does not justify these delays. Appellants' fifth point of error is overruled.

The judgment of the trial court is affirmed.