# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00707-CV

**Appellants, M. P. McCammon; McCammon Oil, Inc.; Nosivad Oil, Inc.; Van Davison; Dawn Davison; Tejon Exploration; Doralex Energy, Inc.; Mansefelt Investment Corp.; Fred Harendt; et al.// Cross-Appellants, Noel D. Ischy and NOW Development Company, Inc.**

**v.**

**Appellees, Noel D. Ischy and NOW Development Company, Inc.// Cross-Appellees, M. P. McCammon; McCammon Oil, Inc.; Nosivad Oil, Inc.; Van Davison; Dawn Davison; Tejon Exploration; Doralex Energy, Inc.; Mansefelt Investment Corp.; Fred Harendt; et al.**

### FROM THE DISTRICT COURT OF CONCHO COUNTY, 119TH JUDICIAL DISTRICT NO. 3750, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants/cross-appellees—M. P. McCammon, McCammon Oil, Inc., Nosivad Oil, Inc., Van Davison, Dawn Davison, Tejon Exploration, Doralex Energy, Inc., Mansefelt Investment Corp., Fred Harendt, et al.—and appellees/cross-appellants Noel D. Ischy and NOW Development Company, Inc.[1] appeal from a district court judgment in favor of Ischy in a trespass to try title action concerning an oil and gas lease on a 169.1-acre tract of land in Concho County. We conclude that Ischy cannot prevail on his trespass to try title claim, as he proved neither a complete chain of title

---

[1] For clarity, we refer to appellants/cross-appellees collectively as McCammon, and to appellees/cross-appellants collectively as Ischy, except where necessary to distinguish among appellants in reciting historical facts.

nor actual possession of the minerals. We reverse the judgment of the district court and render judgment in favor of McCammon.

*Factual and Procedural Background*

Through his company NOW Development Co., Noel D. Ischy, an oil and gas well operator, purchases underproductive leasehold estates and works to increase their production. In 2000, Ischy acquired oil and gas leases on two wells in Concho County, the Millar-Loveless well and the Millar-A well, along with surrounding tracts of land. The surrounding tracts of land include the 169.1-acre tract at issue here.

Mike McCammon is an independent oil producer operating out of the San Angelo area through his company, McCammon Oil & Gas, Inc. Phil Davison, a geologist, operates Nosivad Oil, Inc. In July 2003, McCammon and Davison purchased a lease on the 169.1-acre tract of land at issue here, described as:

> Being 169.1 acres out of the Northeast part of the Chris Funck Survey No. 2124, A-182, and being a part of the same lands as described in that certain Deed dated March 15, 1951, from W.R. Loveless, et al., to Nannie Millar Malloy, recorded in Volume 71, Page 531, Deed Records, Concho County, Texas.

Before purchasing the lease, McCammon had hired Cary Headstream to investigate tracts open for lease in the area. Headstream's investigation revealed that, in 1989, the Millar and Cocke families had executed leases on various tracts of land, two of which included the 169.1-acre tract at issue here. However, a review of the oil roll tax records showed no property taxes being paid on abstract number 1558, the number listed on both leases, indicating that there was no production

2

holding the leases.[2]  Relying on this information, McCammon instructed Headstream to purchase the lease on the 169.1-acre tract.  Headstream negotiated the purchase of the lease with members of the Millar family, the property owners.  Five members of the Millar family signed the lease and provided a warranty of title.  Headstream recorded the lease in the Concho County deed records.

In late April or May of 2004, McCammon obtained a drilling permit from the railroad commission and requested a title opinion from attorney Terry Sterling.  On June 4, 2004, McCammon received Sterling's title opinion.  Sterling had also discovered the two 1989 leases that Headstream had found.  Unlike Headstream, however, Sterling noted potential problems with the title to the 169.1-acre tract.  According to Sterling, McCammon needed to obtain affidavits of nonproduction for the land covered by the two 1989 leases or to obtain releases of the owner's interest.  Sterling also opined that McCammon needed ratifications from the custodians of minors Abram C. Millar and Amy Millar, who had been conveyed part of the mineral estate by their grandparents, Abram Millar and Zelma Millar, under the Texas Uniform Transfer to Minors Act (TUTMA).  McCammon referred the matter to Headstream, who began working to clear the title.

Viewing these title issues as mere formalities that would be resolved, McCammon began drilling activities in June 2004.  The well was started or "spudded" on July 2. Drilling occurred from July 5 through July 16, and the completion phase ran through mid-August. It is undisputed that McCammon's drilling operations were open and obvious.

---

[2]  Generally, a lease payment holds the lease on oil and gas property until drilling and production occur.  Once production is established on any tract covered by the lease, the entire lease is held by production until production ceases.  *See, e.g.*, *Mathews v. Sun Oil Co.*, 425 S.W.2d 330, 333 (Tex. 1968); *Moore v. Jet Stream Invs., Ltd.*, 261 S.W.3d 412, 422-25 (Tex. App.—Texarkana 2008, pet. denied).

In August, Headstream reported to McCammon that one of the two 1989 leases that included the 169.1-acre tract at issue also included a different tract on which there was a producing well, the Millar-Loveless. Headstream had not discovered the production under one of the 1989 leases during his investigation because of an error in the abstract number on the relevant 1989 lease. Although the correct abstract number for the lease in question is 1588, both of the 1989 leases listed 1558 as the abstract number. The oil roll showed no production on the incorrect abstract number—1558—but showed active production on the correct abstract number—1588.

When McCammon learned of the production issue and the numbering error, he contacted Ischy, and the two met to discuss a possible solution. McCammon and Ischy were unable to agree upon a solution, and McCammon filed a claim for relief in district court, asking the court to declare that Ischy had impliedly consented to McCammon's entry, drilling, and production of the McCammon well and that Ischy was estopped from withdrawing his consent. Ischy answered and asserted a counterclaim for trespass to try title.

Ischy moved for summary judgment on McCammon's estoppel theory and on McCammon's defense of good-faith trespass. The district court granted summary judgment on estoppel, but denied summary judgment on good-faith trespass. Before trial, the district court realigned the parties, making Ischy the plaintiff and McCammon the defendant. At trial, the district court excluded all evidence of Ischy's knowledge and conduct and evidence of the reasons why McCammon continued to operate the well.

A jury found that Ischy lawfully possessed his property and that McCammon had not acted in good faith in drilling, completing, and equipping the well. The district court entered

judgment consistent with the jury verdict. The district court determined that Ischy has superior title and right to possession of the 169.1-acre tract. The court ordered McCammon to turn over operations on and possession of the property to Ischy and to release the almost $1 million dollars being held in suspense to Ischy.

Both McCammon and Ischy appeal. McCammon argues that Ischy failed to prove superior title under the rules of trespass to try title and, in the alternative, that the district court improperly granted summary judgment on estoppel and excluded all evidence of McCammon's claims and defenses, that insufficient evidence supports the jury findings, and that the district court's judgment was overly broad in awarding Ischy possession of McCammon's oilfield equipment. Ischy challenges the district court's refusal to award attorneys' fees.

### *Trespass to Try Title*

A trespass to try title action is the method for determining title to real property in Texas. *See* Tex. Prop. Code Ann. §§ 22.001-.045 (West 2000). To prevail in a trespass to try title action, a plaintiff must do one of the following: (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964). A plaintiff may prevail only on the superiority of his title, not on the weakness of the defendant's title. *Id.* If the plaintiff fails to establish his title, the effect of a take nothing judgment against him is to vest title in the defendant. *Hejl v. Wirth*, 343 S.W.2d 226, 227 (Tex. 1961).

5

*Superior Title from a Common Source*

Ischy claims to have established a prima facie case of superior title from the common sources through which McCammon claims title. To prevail by this means, Ischy had to connect his title and McCammon's title through complete chains of title to a common source. *See Rogers v. Ricane Enters.*, 884 S.W.2d 763, 768 (Tex. 1994). Ischy had to then show that his title is superior to McCammon's. *See id.*

Ischy claims record title to the leasehold on the disputed tract through the two 1989 leases, assigned to him in 2000 by Petro-West Corp. By virtue of his production on one of the tracts covered by one of the two 1989 leases, Ischy claims to hold title to the 169.1-acre tract at issue here. The 1989 leases and the McCammon lease refer to a common source—a 1951 deed from W.R. Loveless, et al. to Nannie Millar Malloy. The 1951 deed is the common source from which Ischy must derive his title through a complete chain of title.

McCammon argues that although the 1951 deed was offered and admitted at trial, nothing connects Nannie Millar Malloy's interest with anyone after her in the chain. In addition, no legal instrument shows that the property interest conveyed by Abram and Zelma Millar to their minor grandchildren under the TUTMA were conveyed to Ischy's predecessor, Petro-West. According to McCammon, there is a gap in the chain of title between Malloy and the lessors under whom Ischy claims title, and there is a gap in the chain of title between the Millar minors and Ischy's predecessor, Petro-West. While Ischy recognizes that the gaps exist, he asserts that the gaps are not fatal to his claim. Ischy argues that the testimony of attorney Terry Sterling conclusively establishes that Ischy had older and superior title, and that the missing ratification document necessary to convey the

6

TUTMA interests exists and is recorded. McCammon disagrees, arguing that expert testimony is not admissible to fill a gap in record title in a trespass to try title action.

McCammon relies chiefly on *City of Mission v. Popplewell*, 294 S.W.2d 712 (Tex. 1956), and on *Ramsey v. Jones Enterprises*, 810 S.W.2d 902 (Tex. App.—Beaumont 1991, writ denied). In *Popplewell*, the City of Mission had the burden of proving its title to a disputed alley. Although the supreme court recognized that testimony of the expert engineer could potentially bridge the gap in the chain of title, it held that the city was required to proved its legal title by valid written instruments, not by oral evidence:

> Parol evidence in the form of opinions and conclusions without documentary basis is inadmissible to establish such title, and even if admitted without objection is of no probative force.

294 S.W.2d at 277.

In *Ramsey*, the appellee attempted to prove superior title to the disputed tract based solely upon the expert testimony of an attorney. 810 S.W.2d at 903. In holding that the trial court erred in allowing the appellee to prove title in a trespass to try title action with nothing more than the oral expert testimony of an attorney, the court explained:

> Legal history as well as public policy requires that proof in trespass to try title actions be as certain as available documentary evidence will allow. Establishing legal or equitable interest or title to real property demands far more than a swearing match among witnesses, whether expert or otherwise. It demands strict proof based in records and documents.

*Id.*

Ischy attempts to distinguish *Popplewell* and *Ramsey*, arguing that *Popplewell* is limited to cases in which the parol evidence rule applies and that *Ramsey* applies only in cases in which the defendant objects under the best evidence rule. In *Popplewell*, however, the issue was not whether extrinsic evidence could be used to prove the contents of an unambiguous document. *See In re H. E. Butt Grocery Co.*, 17 S.W.3d 360, 369 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) ("The parol evidence rule precludes consideration of extrinsic evidence to contradict, vary or add to the terms of an unambiguous written agreement absent fraud, accident or mistake."). Rather, the issue was whether testimonial evidence, in the form of opinions and conclusions, could—standing alone—establish record title in a trespass to try title action. *Popplewell*, 294 S.W.2d at 277. The court held that it could not. *Id.* Likewise, although the court in *Ramsey* discussed the best evidence rule, its decision turned on the substantive requirements of a trespass to try title action, not on the applicability of the best evidence rule. 810 S.W.2d at 905. Moreover, even if the *Ramsey* decision had been based solely on the best evidence rule, its holding would still act to exclude the expert testimony offered here, as Ischy, the party offering the evidence, has not shown that the documentary evidence was unavailable through no fault or failure on his part. *See id.*

To support his contention that courts have relaxed the rule that only documentary evidence can prove title in a trespass to try title action, Ischy relies on *Bacon v. Jordan*, 763 S.W.2d 395, 397 (Tex. 1988), on *King v. Grisbee*, No. 09-05-00100-CV, 2006 Tex. App. LEXIS 8124, at *9-10 (Tex. App.—Beaumont Sept. 14, 2006, no pet.) (mem. op.), and on *Exploracio de la Estrella Soloataria Incorporacion v. Birdwell*, 858 S.W.2d 549, 553-54 (Tex. App.—Eastland 1993, no writ).

8

In both *Bacon* and *King*, however, title was proved through documentary evidence. *Bacon*, 763 S.W.2d at 397; *King*, 2006 Tex. App. LEXIS 8124, at *3. Although witnesses may have also testified in an attempt to explain the documents, there is no indication that there were gaps in the documentary proof of title that were filled solely by testimony. *Bacon* and *King* are, therefore, consistent with the rule in *Popplewell* that title in a trespass to try title action must be established by documentary evidence. The other case on which Ischy relies—*Birdwell*—is inapplicable here, as the plaintiff's suit to cancel the lease in that case, described as a suit to quiet title, did not require Birdwell to prove superior title to the property by tracing his title to a common source, as is required in a trespass to try title action. 858 S.W.2d at 553-54; *see also Babcock v. Brickell*, No. 03-99-00702-CV, 2000 Tex. App. LEXIS 3913, at *5-6 (Tex. App.—Austin June 15, 2000, no pet.) (mem. op.) (although plaintiff in suit to quiet title must generally prevail on strength of his own title, when parties trace their titles to common source, plaintiff need only prove superior title as to defendant).

Our review of the trespass to try title cases shows that documentary evidence is required to establish title. Here, gaps admittedly exist in the chain of title between Malloy and the lessors under whom Ischy claims title, and in the chain of title between the Millar minors and Ischy's predecessor, Petro-West. Ischy attempts to fill these gaps with testimonial evidence. This does not satisfy his burden of proof. Thus, Ischy has failed to establish superior title to McCammon from a common source.

*Title by Prior Possession*

At trial, Ischy also sought to establish superior title through prior possession. When asked, the jury determined that Ischy was "lawfully in possession of the subject property when Defendants entered upon same." McCammon challenges the sufficiency of the evidence to support this finding.

For a legal sufficiency challenge, we review the evidence in the light most favorable to the judgment, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain McCammon's legal sufficiency challenge if the record reveals: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

For a factual sufficiency challenge, we must consider and weigh all the evidence in the record, both in support of and against the finding, to decide whether the finding should be set aside. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We will sustain McCammon's factual sufficiency challenge only if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The jury answered "yes" to the following question as to prior possession:

> Was Noel Ischy lawfully in possession of the subject property when Defendants entered upon same?

In Ischy's view, McCammon's complaint is essentially that the jury was given neither a definition of prior possession nor instructions on how to answer the question, and as Ischy points out, McCammon neither objected on these grounds nor submitted a proposed definition or instructions that he considered proper. Although definitions or instructions would have assisted the jury in determining whether Ischy was "in possession of the subject property," the question submitted is not inconsistent with the arguments or the evidence the jury was asked to consider, and the substance of McCammon's complaint on appeal is that the evidence does not support the court's charge, even as submitted.

It is well-established that "it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). As presented at trial, the jury was asked to consider whether Ischy possessed the "subject property," which was defined earlier in the charge as:

> 169.1 acres out of the Northeast part of the Chris Funck Survey No. 2124, A-182, and being a part of the same lands as described in that certain Deed dated March 15, 1951, from W.R. Loveless, et al., to Nannie Millar Malloy, recorded in Volume 71, Page 531, Deed Records, Concho County, Texas.

During closing arguments, the jury was informed that a person can prove possession by establishing record title to the property or by showing production from wells on the lease. However,

11

as McCammon's counsel pointed out, the question actually submitted asked the jury "solely about [the 169.1-acre] tract of land and none other."

McCammon now relies on *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 193 (Tex. 2003), to establish the legal meaning of possession in the context of oil and gas leases, arguing that "[i]n the context of adverse possession of minerals, the Texas Supreme Court has plainly determined that 'actual possession' of oil and gas means 'drilling and production of oil or gas.'" However, as we have noted, there was no definition or instruction on the meaning of possession in the jury charge. The only instruction the jury was given at trial as to the meaning of possession is that it can be established by establishing record title to the property or by showing production from wells on the lease. We, therefore, examine the sufficiency of the evidence in this context. *See Osterberg*, 12 S.W.3d at 55.

As we discussed above, Ischy failed to prove record title to the property and, therefore, cannot rely on record title to establish possession. Thus, as the case was submitted to the jury, Ischy was required to present evidence that he had possession of the 169.1-acre tract through production. He attempts to do so by pointing to his own producing well, the Millar-Loveless, located on another tract of land. However, according to the charge submitted to the jury, the jury was only to consider whether Ischy had a producing well on the 169.1-acre tract, not on other tracts that might be covered by the same lease. To do so, Ischy points to evidence that, in 1994, a predecessor produced gas from a plugged well on the 169.1-acre tract at issue. However, the undisputed evidence is that the well on which Ischy relies to establish possession was plugged and abandoned before Ischy bought the lease. Indeed, Ischy testified that "[t]here was a plugged well on that tract,

12

but not a producing well on that tract." The undisputed evidence also shows that, when McCammon bought his lease, there was no producing well on the 169.1-acre tract.

Moreover, there was no evidence presented to the jury that Ischy ever possessed the 169.1-acre tract in any manner beyond his claim of record title. Neither of the signs indicating an interest by Ischy, one for the 320-acre Millar-Loveless lease and one for the 318.44-acre Millar-A lease, was located on the 169.1-acre tract. There was no evidence in the record that Ischy had been to Concho County or had ever set foot on the property. It was undisputed at trial that McCammon's drilling operations were open and obvious and that no one ever questioned him or told him to stop. Indeed, it was McCammon who initially contacted Ischy when McCammon eventually learned that there was a possible problem with the title. Based on the jury charge submitted and our review of the evidence and arguments presented to the jury at trial, we find no evidence to support the jury's finding that Ischy had possession of the 169.1-acre tract.[3]

We have determined that Ischy did not establish his title either by proving record title from a common source or by prior possession. Thus, under the strict rules of trespass to try title, title in the leasehold at issue vests in McCammon. *See Hejl*, 343 S.W.2d at 227.

*Equitable Grounds*

Ischy also contends that this Court can affirm on equitable grounds. Ischy's counterclaim included only a trespass to try title action, not an equitable action to quiet title. A claim to quiet title or to remove cloud on title, equitable actions, and a claim in trespass to try title are

---

[3] Having so found, we need not address McCammon's contention that the possession question was immaterial.

13

distinct causes of action. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.); *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). Ischy did not assert an action to quiet title in the trial court and obtained neither jury findings nor a judgment on a quiet title action. He has not, therefore, preserved this argument for review. *See* Tex. R. App. P. 33.1.

### *Conclusion*

We reverse the judgment of the district court and render judgment that Ischy take nothing on his claims and that title and possession of the 169.1-acre mineral estate, including all equipment and improvements, is vested in McCammon.[4]

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop;
    Chief Justice Law not participating

Reversed and Rendered

Filed:   May 12, 2010

_____

[4] Our resolution of the issues relating to trespass to try title and quieting title are dispositive of Ischy's issue regarding the trial court's failure to award him attorneys' fees. That issue is overruled.